1  JOHN D. SCHEMA
2  E-mail: jdschema@hotmail.com
3  General Delivery
4  North San Juan, CA 95960
5  Telephone: 530-412-2854

6  Pro Se Litigant

7





FILED

MAR 2 4 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11                                          CASE NO.: 2:14-cv-0630 MCE DAD PS

12  JOHN D SCHEMA,

13  Plaintiff,

14     v.

15                                          **OBJECTIONS TO MAGISTRATE**
16                                          **JUDGE'S FINDINGS AND**
17                                          **RECOMENDATIONS**

18  UNTITED STATES OF AMERICA AND IT'S AGENCIES:
19  UNITED STATES DEPARTMENT OF AGRICULTURE;
20   TOM VILSACK, in his official capacity as Secretary
21   for the Department of Agriculture; UNITED STATES
22   FOREST SERVICE; TOM TIDWELL, in his official
23  capacity as Chief of the United States Forest
24  Service; RANDY MOORE, in his official capacity as
25   Regional Forester for the United States Forest
26  Service's Pacific Southwest Region; TOM QUINN,
27  in his official capacity as Forest Supervisor at the
28  Tahoe National Forest; JEAN M. MASQUELIER, in
29  her former official capacity as District Ranger at
30  the Yuba River Ranger District; GENICE
31  FROEHLICH, in her former official capacity as
32  District Ranger at the Yuba River Ranger District,

33  Defendants.

34

35

1

1    Plaintiff herein objects to Magistrate Judges Findings and Recommendations dated Jan. 26, 2015.

2

3    In addition, plaintiff respectfully requests the District Judge to order an investigation by the appropriate

4    governing agency, or agencies, into the practices currently being employed at the Tahoe National Forest,

5    "TNF" hereafter, in regards to the application of their stated "roadless values"; particularly as TNF

6    officers and officials have been implementing them in this case, and the related criminal case.

7

8    Plaintiff proceeds as a Pro Se Litigant, as best as he is able; burdened by this intentionally negligent,

9    malicious, unnecessary, illegal, financial and negative emotional hardship.   Regardless, plaintiff wishes

10   to pay his deepest respects to every law, and every effort to apply our laws with fairness and justice for

11   all, equally; as intended, by this competent Court of jurisdiction, or any Other Court as It may apply.

12   Throughout this process, and always, may God help and guide us all.

13

14   TNF Officials/U.S. Attorney's are not acting reasonably, responsibly, or legally.

15

16   As a result, TNF Officials/U.S. Attorney's, have unnecessarily burdened this Court, and taxpayers and

17   plaintiff. They openly abuse our legal process, and harass plaintiff without merit.

18

19   They have openly recognized this right of way, verbally, in writing, and in their actions.  They

20   acknowledged the easement and promised to cooperate in the restoration of this historic access with

21   plaintiff, state transportation officials in Marysville, District 3 ("CalTrans"), and a State Superior Court

22   Judge, County of Nevada, WITH NO INTENTIONS OF PERFORMANCE.

23

24   TNF Officials/U.S. Attorney's slander plaintiff's good name in his community with "false and malicious

25   criminal charges; and a brutal unnecessary arrest on Nov. 1, 2013". They continue to violate state and

26   local rules and federal regulations; and consciously place human life and private property in high risk of

27   death and total destruction within a common wildfire incident.  This is unconscionable and illegal.  Based

28   on solid law and the preponderance of factual evidence available to any reasonable inquiry.

29

1   TNF Officials have repeatedly demanded that these issues be referred to the judicial process.  So let it

2   continue to be implemented as it was intended…to serve a just and fair end; all relevant law and

3   evidence duly considered by their appropriate peer agencies.

4

5   Further, this court should not dismiss plaintiffs' "QTA" claim.  Not without first acknowledging plaintiffs'

6   easement appurtenant and individual right to restore feasible access to his private land predicated on

7   the preponderance of factual evidence of this currently vital and historic public road, and privately

8   maintained easement, as an individual right of feasible access, consistent with the common rights

9   associated with any 'legal easement for normal and costomary ingress and egress'.

10

11  Specifically, Pursuant to Federal Rule of Civil Procedure 12(a)(2); plaintiff is attempting to sue the USA,

12  its' agencies, and officers in their official capacity; not individuals.

13

14  And other easement theories apply and have been argued, also pursuant to Title 36 CFR 251.50(e)(3).  In

15  addition to the RS 2477 argument, they include, but are not limited to: "Documented linear right of

16  way".  CalTrans circa 1946, and BLM 1963 and 2013 maps on file and accessible to the public, in addition

17  to a private surveyors' site visit documentation in 2006, clearly establish the easements existence at the

18  time TNF Officials acquired stewardship responsibilities of this land in 1981.  This public easement was

19  clearly existing in 1916 when plaintiffs' land was patented, also evidenced by Nevada County Board of

20  Supervisors official minutes.  Therefore, the existing easement, and plaintiffs' personal rights of access,

21  were carried with plaintiffs' land as an appurtenance.  Plaintiffs' easement was implied in fact.  It was

22  later affirmed by Cal. Dept. of Transportation circa 1946, and by U.S. Dept of Interior/BLM in official

23  survey maps and a private surveyor as mentioned above.

24

25  This Court further agreed that plaintiff has a valid QTA claim in the previous Order, dated Sept. 4, 2014,

26  as noted.

27

28  Based on all relevant law and the supporting preponderance of reasonably available factual evidence, it

29  is further requested that this Court issue an instant order to TNF Officials to remove the illegal

3

1   obstruction currently blocking this public easement at the Clear Creek Encroachment; illegally placed on

2   November 1, 2013 by a TNF Law Enforcement Officer and his agents; and to simply "stop harassing

3   plaintiff" within his reasonable and lawful efforts to gain a more feasible alternate easement route, as

4   previously agreed.  Plaintiff was brutally and maliciously arrested illegally.  No charges have been filed

5   by either party to date.

6

7   Plaintiff further respectfully requests that this Court officially approve Plaintiffs' ongoing access

8   restoration efforts in cooperation with county of Nevada's Community Development Agency, county

9   Supervisor(s), and State Officials within CalFire and CalTrans, and other more responsible and

10  reasonable federal agencies and officials, in compliance with county and state fire-safe access codes in

11  preparation for the future development of plaintiffs' single family residence.  Plaintiffs' driveway

12  standards will default as a vital emergency access route for ingress and egress in a wildfire incident.  It

13  will meet the current fire-safe requirements of a 40-50,000 lb modern loaded fire-fighting apparatus, a

14  loaded water tender, and a lowboy tractor-trailer rig transporting a bulldozer as may be needed.  The

15  current "ONE" ingress and egress route to many of my neighbors to my east is severely restricted by an

16  old dilapidated rail-car bridge, and numerous turns and slopes that do not meet current Fire-Safe access

17  codes; reference: Lacey McFarlands' residence, and fire incident dated June 24, 2013, on "New School

18  Road West", three miles not to code, to Oak Tree Road. Response time: over 40 minutes!!  A structure

19  and a dog were lost.  "Two ways out." The Motto and standard of our California State Fire Marshall.

20

21

22  Plaintiff is not willing to endure this continued abuse of our legal process while TNF, the U.S. Attorney's

23  Office, and possibly others, who are collectively, and simply "bullying" plaintiff herein, and as related

24  criminal case defendant, into accepting unfair terms and conditions surrounding his common law legal

25  rights to feasible access, use and enjoyment of his private land; as previously and unquestionably

26  promised.

27

28  If TNF Officials continue to refuse to cooperate within normal reason and law in support of the People of

29  this community, on or after May 15, 2015, plaintiff herein with the support of the People inhabiting this

1   land, will effectively remove the existing illegal obstruction at the Clear Creek Encroachment, as

2   previously authorized and permitted, and continue the reasonable restoration of this access in

3   cooperation with current local community fire-safe access codes and officials for this alternate route

4   utilizing the appropriate heavy equipment, as specifically and reasonably requested by TNF Officials;

5   only to be unreasonably denied at a later date in an apparent attempt to overreach their perceived

6   powers...illegally.

7

8   Pursuant to 36 CFR 251.50(e)(1, 2 and 3).  No Special Use Permit, grant or document is required under

9   these authorities.  Final Rule.

10

11   Also:    36 CFR 261.10f  "Placing a vehicle or other object in a manner that it is an impediment or hazard

12   to the safety or convenience of any person.

13          36 CFR 261.12d  "Blocking, restricting, or otherwise interfering with the use of a road, trail, or

14   gate.

15          36 CFR 261.4c  Making statements or other actions directed toward inciting or producing

16   imminent lawless action and likely to incite or produce such action.

17

18   TNF Officials, or this Court, should officially recognize and authorize the easement herein, and its'

19   associated rights and privileges of plaintiff for creating feasible and reasonable access, in cooperation

20   with local qualified officials, and specifically the use of hand tools WITHOUT THE ADMINISTRATIVE

21   REQUIREMENT OF A SPECIAL USE PERMIT THROUGH UNREASONABLE TNF OFFICIALS.

22

23   Dated:  March 24, 2015                              Respectfully submitted,

24

25

26                                                       John D. Schema

27                                                       Pro Se Litigant

28

**Job Details:**

**Title:** District Ranger – Tahoe National Forest - Yuba River RD

**Annual Salary:**

**Series:** 0340

**Respond By Date:** 01/19/10

**Grade:** GS-13

**Duties:** This outreach has been extended till 01/19/10 The Tahoe National Forest is outreaching for a District Ranger, GS-0340-13 with a duty station of Camptonville, California – Please Note that Nevada City and Grass Valley are also within the commute area of the Duty Location. This position is being advertised under an open and continuous vacancy announcement. If interested in this position, please apply to the vacancy announcement number listed below and list Camptonville, CA as your AVUE Duty Location: ADS07-WOJOBS-0029G (Permanent federal employees or excepted hiring status) The vacancy announcement for this position is listed on the USAJOBS website: http://www.usajobs.gov: and applications can be completed at http://www.avuedigitalservices.com/usfs/applicant.html Note: Must be a current or previous permanent federal employee or eligible under an excepted hiring authority. DUTIES: Serves as District Ranger responsible for overall management of the Yuba River Ranger District with offices in Camptonville, Yuba County, CA and Nevada City, Nevada County, CA. The Ranger is expected to build new partnerships and maintaining existing partnerships. Responsible for enhancing wildlife habitat, maintaining clean water, ensuring adherence to roadless values, vegetation management, administering a complex minerals program, managing a variety of recreational opportunities and safeguarding communities from wildfires. Accountable for accomplishment of National and Regional Emphasis items and targets. The Ranger manages about 50 permanent positions and 20 temporary positions as well as volunteers. Responsible for establishing and maintaining a safe work environment. Assures employees follow policies and guidelines regarding diversity and positive work environment. Serves as a member of the Forest Leadership Team.

**Job Location:**

**Forest:** Not Applicable

**District:** Not Applicable

**Location Other:** Job Location: The main District office is located in Camptonville, California, a small town on scenic Highway 49 in the Gold Country. Employees in the southern portion of the District are located in Nevada City, CA. A work station is located in the town of Downieville (population 350), Sierra County, CA. The town of Camptonville (population 400) has a volunteer fire department, a K-8 school, a post office, a pizzeria, two churches, and two small mini markets. At an elevation of about 2,500 feet, winters are mild and summers are pleasant. Many employees live in the Nevada City/Grass Valley area of western Nevada County (population 40,000). Nevada City/Grass Valley is a full service semi-urban area offering many elementary schools, a community college, high schools, restaurants, shopping centers, churches, grocery stores, movie theaters, etc. From Grass Valley it is approximately 90 miles to Reno, Nevada, 60 miles to Sacramento and 150 miles to San Francisco. Lake Tahoe and abundant skiing opportunities are about 70 miles to the east. Nevada City/Grass Valley: Considered one of the most desirable places to live in California, the Nevada City/Grass Valley area offers the amenities of a much larger community, as well as a rural setting. Numerous medical services including a full service hospital, a community college and an active arts and entertainment community are also available. Western Nevada County has a population of about 50,000 although the incorporated area of Nevada City is 3,000 and Grass Valley is 12,000. Housing prices range from

*tenement was reasonably necessary for purposes for which easement was created; use actually made by owner over time fixed location, nature, and extent of use. Colvin v. Southern Cal. Edison.co. (1987) 194 Cal. App. 3d 1306, 1312, 240 Cal. Rptr. 142*

### (2)   Implied Easement

*The scope of an implied easement is measured by the extent to which the property was obviously and permanently used when the transfer was made. The scope must be inferred from all of the circumstances, including the existing uses and expected uses that were within the reasonable contemplation of the parties (Kytasty v. Godwin (1980) 102 Cal. App. 3d 762, 771, 162 Cal. Rptr. 556). It is assumed that the parties anticipated uses that might reasonably be required by a normal development of the dominant tenement but did not anticipate an abnormal development. The easement's scope does not usually extend to uses required by an abnormal development (Fristoe v. Drapeau (1950) 35 Cal. 2d 5, 9-10,215 P2d 729; Horowitz v. Noble (1978) 79 Cal. App. 3d 120, 133-134, 144 Cal. Rptr. 710; Maywood Mut. Water Co. No. 2 v. City of Maywood (1972) 23 Cal. App. 3d 266, 271 n.3, 100 Cal. Rptr. 174; see Civil Code 806).*

### 240.16   Relations Between Owners of Various Interests

### (5)   Apportionment of Easement on Partition

*If the dominant tenement is partitioned or subdivided, the easement must be apportioned accordingly. The owner or assignee of any portion of the dominant tenement may assert rights under the easement that are applicable to his or her part of the property (Civil Code 807; Herbert v. Russell (1969) 1 Cal. App. 3d 63, 66, 81 Cal. Rptr. 448; Leggio v. Haggerty (1965) 231 Cal. App. 2d 873, 881, 42 Cal. Rptr. 400). The burden, however, may not be apportioned so as to impose an undue or unreasonable burden on the servient tenement (Civil Code 807; Jordan v. Worthen (1977) 68 Cal. App. 3d 310, 327, 137 Cal. Rptr. 282).*

### 240.17   Transfer of Easement

*A transfer of the dominant tenement passes all easements appurtenant to the land, whether or not they are specifically mentioned in the deed (see Civil Code SS 801, 1104; St. Louis v. DeBon (1962) 204 Cal. App. 2d 464, 466, 22 Cal. Rptr. 443). In contrast, transfer of an easement in gross requires an express assignment since the right is only personal (St. Louis v. DeBon (1962) 204 Cal. App. 2d 464, 466, 22 Cal. Rptr. 443). As a personal right, an easement in gross may be conveyed independently of the land, whereas an easement appurtenant may not be transferred to a*

*third party or severed from the land (City of Anaheim v. Metropolitan Water Dist. of Southern Cal. (1978) 82 Cal. App. 3d 763, 768, 147 Cal. Rptr. 336).*

20.     See ~~Exhibit no. 20~~            Map of 'Township 18 North Range 8 East of the Mount Diablo Meridian, California' 'Status of Public Domain Land and Mineral Titles and Acquired Lands'.  Certified to be a True Copy, California State Office, Bureau of Land Management.

Note a:  This is a 'Patent Map' identifying the 'Deeds' documenting the transfer of public lands from the United States Government to it's successors.  Note Section 33, specifically where Plaintiff's parcel is situated in the south half of the northwest quarter identified by number 546830. Now see exhibit no. 21.

21.     ~~See Exhibit no. 21~~            Patent No. 284.  (~~Also see next page, bottom: Record of Patents: Patent Number 546830~~) Documenting the transfer of the original parcel containing Defendant's parcel from United States Government to Central Pacific Railway Company, Successor to the Central Pacific Railroad Company in 1916.  Primary Limits, Sacramento Land District, California.

Note a: See page 3, paragraph entitled: '*Township eighteen north of Range eight east.*'  Last sentence:...*and the northwest quarter of section thirty-three*; which clearly includes Defendant's PIQ.

Note b:  Page 3, bottom: *NOW KNOW YE, That the UNITED STATES OF AMERICA, In consideration of the premises, and pursuant to the said Acts of Congress, HAS GIVEN (Page 4) AND GRANTED, and by these presents DOES GIVE AND GRANT, unto the said Central Pacific Railway Company, successor in interest to the Central Pacific Railroad Company, its successors and assigns, the tracts of land listed as aforesaid and described in the foregoing: TO HAVE AND TO HOLD the said tracts, with the appurtenance thereof, unto the said Central Pacific Railway Company, successor as aforesaid, and to its successors and assigns forever.* 'IN TESTIMONY WHEREOF' Woodrow Wilson, President of the United

[Code of Federal Regulations]
[Title 36, Volume 2]
[Revised as of July 1, 2010]
From the U.S. Government Printing Office via GPO Access
[CITE: 36CFR251.110]

[Page 377]

TITLE 36--PARKS, FORESTS, AND PUBLIC PROPERTY

CHAPTER II--FOREST SERVICE, DEPARTMENT OF AGRICULTURE

PART 251_LAND USES--Table of Contents

Subpart D_Access to Non-Federal Lands

Sec. 251.110  Scope and application.

Source: 56 FR 27417, June 14, 1991, unless otherwise noted.


    (a) The regulations in this subpart set forth the procedures by
which landowners may apply for access across National Forest System
lands and the terms and conditions that govern any special use or other
authorization that is issued by the Forest Service to permit such
access.
    (b) These regulations apply to access across all National Forest
System lands, including Congressionally designated areas, and supplement
the regulations in subpart B of this part, and in parts 212 and 293 of
this chapter. The regulations of this subpart do not affect rights-of-
way established under authority of R.S. 2477 (43 U.S.C. 932); rights-of-
way transferred to States under 23 U.S.C. 317; access rights outstanding
in third parties at the time the United States acquired the land; or the
rights reserved in conveyances to the United States and in other
easements granted by an authorized officer of the Forest Service. Except
for the aforementioned rights-of-way, currently valid special-use
authorizations will become subject to the rules of this subpart upon
expiration, termination, reversion, modification, or reauthorization.
    (c) Subject to the terms and conditions contained in this part and
in parts 212 and 293 of this chapter, as appropriate, landowners shall
be authorized such access as the authorized officer deems to be adequate
to secure them the reasonable use and enjoyment of their land.
    (d) ln those cases where a landowner's ingress or egress across
National Forest System lands would require surface disturbance or would
require the use of Government-owned roads, trails, or transportation
facilities not authorized for general public use, the landowner must
apply for and receive a special-use or road-use authorization
documenting the occupancy and use authorized on National Forest System
lands or facilities and identifying the landowner's rights, privileges,
responsibilities, and obligations.
    (e) Where ingress and egress will require the use of existing
Government-owned roads, trails, or other transportation facilities which
are open and available for general public use, use by the landowner
shall be in accordance with the provisions of part 212 of this chapter.
    (f) The rules of this subpart do not apply to access within
conservation system units in Alaska which are subject to title XI of the
Alaska National Interest Lands Conservation Act (16 U.S.C. 3101), except
for access to inholdings authorized by section 1110(b) of that Act.
    (g) Where there is existing access or a right of access to a
property over non-National Forest land or over public roads that is
adequate or that can be made adequate, there is no obligation to grant
additional access through National Forest System lands.

FEDERAL DEFENDER'S OFFICE

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

# M E M O R A N D U M

DATE:      June 13, 2013

TO:        File

FROM:      Tina Wang, Certified Law Student

SUBJECT:   R.S. 2477 Rights-of-Way

_____

Next Court Date: 8/7/2013 9:00 a.m. (BT)
Judge: DAD

QUESTION

Whether, if Mr. Scheme has a R.S. 2477 right-of-way for Clear Creek, if he violated federal
regulations by exercising rights associated with that right-of-way.

ARGUMENT

R.S. 2477 was enacted in 1866 and repealed in 1976. It granted self-executing public easements
across federal lands. Specifically, R.S. 2477 granted a right-of-way easement, which allows
specific use rights that supercede the rights of the fee owner of the land. Rights-of-way in
existence under R.S. 2477 before its repeal are grandfathered in under FLPMA and continue to
be valid public easements. In this context, if Clear Creek is a R.S. 2477 right-of-way, then
technically there exists some use rights to accomplish the purpose of the easement.

But the Ninth Circuit has repeatedly held that regardless of the existence of a R.S. 2477 right-of-
way, a federal agency may regulate the use of the easement. In *Hale v. Norton*, the Ninth Circuit
held that "even if the Hales have a valid right-of-way . . . the existence of that right-of-way would
not shield them from reasonable regulation by the [federal agency]." *Hale v. Norton*, 476 F.3d
694, 699 (9th Cir. 2007). Moreover, the Ninth Circuit proclaimed that it has "decisively rejected
the argument that [a government agent] lacks the power to regulate travel to an inholding across
federally protected land." *Id.* In deciding *Hale*, the Ninth Circuit cited to its own precedent-
setting case, *U.S. v. Vogler*. *Vogler* established that even assuming an established right-of-way
exists, "the government is not without authority to regulate the manner of [a defendant's] use of
the [right-of-way]." *U.S. v. Vogler*, 859 F.2d 638, 642 (9th Cir. 1988).

The Ninth Circuit found that the regulations at issue in the *Vogler* case were "well within the broad grant of power" given by the legislature under 16 U.S.C. section 1. Essentially, the Ninth Circuit appears to defer to the legislative authority granted to federal agencies by the legislative branch. Further, the Ninth Circuit found that "the regulations here are necessary to conserve the natural beauty of the Preserve; therefore, they lie within the government's power...." *Id.*

But *Hale* and *Vogler* both deal with National Parks and the authority of the National Park Service (NPS). In the instant case, the alleged easement cuts across Tahoe National Forest under the authority of the United States Forest Service (USFS). This may weaken the interest the government has in conservation. Other considerations may involve if endangered or protected species, protected habitats, and watersheds in the area may be affected.

USFS obtains its regulatory power under 16 U.S.C. section 551, which protects against "destruction by fire and depredations upon the public forests and national forests." 16 U.S.C. § 551. Section 551 allows the Secretary of Agriculture "to regulate their occupancy and use and to preserve the forests thereon from destruction." *Id.* Additionally, 16 U.S.C. section 554 provides for the selection of USFS employees to presumably carry out the regulations.

Given the Ninth Circuit's apparent legislative perspective in its decisions regarding R.S. 2477, the Ninth Circuit may read 16 U.S.C. section 551 as a parallel to section 1, without making any differentiation between them. Considering that the Ninth Circuit has "focus[ed] on enabling statutes by which Congress delegates its broad property power,"[1] it makes little sense for Congress to distinguish between statutes that delegate power. For example, in *Adams v. U.S.*, the court found that although the Adamses had an easement granting them the right of access to their lands under the Alaska National Interest Lands Conservation Act, that access "is, of course, not absolute." *Adams v. U.S.* 3 F.3d 1254, 1259 (9th Cir. 1993 ) (quoting *Mont. Wilderness Ass'n v. USFS*, 496 F. Supp. 880 (D. Mont. 1980)).[2] The Ninth Circuit reasoned that "Congress has the authority and responsibility to manage federal land. Congress has by statute delegated this authority to agencies such as the Forest Service." *Id.*

The limit of a federal agency's power to regulate seems constrained by the language of the statute delegating power. In *Vogler*, the Ninth Circuit found that the regulation requiring Vogler obtain a permit to operate off-road travel is "*necessary* to conserve the natural beauty of the Preserve," and therefore within NPS's authority. *Vogler*, 859 F.2d at 642. The Ninth Circuit then referred to 16 U.S.C. section 1902, which allows the Secretary to regulate mining claims "as he deems *necessary or desirable* for the preservation and management of those areas." 16 U.S.C. § 1902.

---

[1] Matthew L. Squires, *Federal Regulation of R.S. 2477 Rights-of-Way*, 63 N.Y.U. Ann. Surv. Am. L. 547, 581 (2008). Squires describes the Ninth Circuit's approach to R.S. 2477 claims as the "legislative approach," pursuant to the Property Clause. Hence, the regulatory authority over R.S. 2477 claims "is in no way constrained by state law." *Id.*

[2] *See also United States v. Jenks*, 804 F. Supp. 232, 237-37 (D. Mont. 1980) ("even if [the court] agree[s] with defendant that there are preexisting easements . . . [the United States] can still regulate these access rights"); *Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979) (a government agency "may regulate activity on federal land so as to prevent impairment of potential wilderness characteristics").

The Ninth Circuit found regulation in *Vogler* necessary to protect the area and hence fell under the purview of the delegated authority, but then goes on to quote that regulations that are *desirable* also fall under this authority. Neither the statute nor the Ninth Circuit explains the meaning of a "desirable" regulation or to what level of scrutiny such a regulation would be subject.

In the present case, section 551, the statute regulating the protection of national forests, states that the Secretary "may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. § 551. The statutory language does not on its face offer a standard for what kinds of regulations are permissible. The standard may be one of reasonableness. Here, a regulation on the permitting process for cutting down trees and maintaining trails likely would fall under "use and to preserve the forests thereon from destruction." If the standard is one of reasonableness, we might look at the permitting process and the permit allowances to determine if it was reasonable.

Given the Ninth Circuit case law, it appears that regardless of an existence of a right-of-way, USFS may still regulate rights-of-way. The standard and scope for this regulation under 16 U.S.C. section 551 is a little unclear from my current research.

# *California Survey Company*

*land surveys-site planning-topographic mapping*

136 Idaho Maryland Road
Grass Valley, CA 95945
Phone - (530) 273-6651 Fax - (530) 273-2930

To: John Schema                                                    **6/2/2005**
Po Box 145
Nevada City, CA 95959

This letter is to document a site visit conducted on this date by myself to verify the location and condition of an old road traversing a portion of the Schema property, located in the Northwest 1/4 of Section 33, Township 18 North, Range 8 East M.D.M., Assessors Pcl. No. 60-330-03. There is a very old road (at least 50 years old) that crosses the southeasterly corner of this parcel and continues in a southwesterly direction to terminate at the top of the cut bank above the current location of Hwy. 49. This road has been unused for at least the last 20 years, and is is overgrown and heavily eroded, but indications of grading are readily discernable and the location of the original road identifiable.

The approximate location of this old road has been indicated on the attached topographic map

Sincerely,

Stephen Hein LS 6792
California Survey Co.



DEFENDANT'S
EXHIBIT
17a
72-767

Covered
Bridge

Oregon Creek
Campground

Little

BM
1765

1719 T

BM
1564

2088 T

RIVER

BM
1434

Freemans
Crossing

BM
1607

2502

YUBA

1600

32

33

Gravel
Range

Freeman

206.4 T

MIDDLE

Clear

Foot

2061 T

2006

4.51

2161 T

Baxtus

2284 T

2112 T

2161 T

215 T

North San Juan

A.87

2195

2175 T

2094 T

Cem

2267 T

Mobile Home
Park

2317 T

2318 T

N★/MN
15½°

0          .5          1 MILE

0    1000 FEET  0      500       1000 METERS

Printed from TOPO! ©2001 National Geographic Holdings (www.topo.com)

DEFENDANT'S
EXHIBIT
17b

72767



ORIGINAL

# TOWNSHIP 18 NORTH, RANGE 8 EAST, OF THE MOUNT DIABLO MERIDIAN, CALIFORNIA.

## SUBDIVISION OF SECTION 33

A history of surveys is contained in the field notes.

This plat represents the subdivision of section 33, Township 18 North, Range 8 East, Mount Diablo Meridian, California.

Lotting and areas are as shown on the township plat approved May 29, 1953.

Survey was executed by Matthew E. Campos, Cadastral Surveyor, beginning April 29, 2013, and completed June 3, 2013, pursuant to Special Instructions dated April 26, 2013, for Group No. 1665, California.

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
Sacramento, California

This plat, having been correctly prepared in accordance with the requirements of law and this Bureau, is hereby accepted.

For the Director

_____ June 25, 2013
Chief Cadastral Surveyor—California

## T. 18 N., R. 8 E., M.D.M.

CA2018N008E003506

LEGEND

■ Land Evidence Recovered, Monumented
● Position Determined and Monumented
⊗ GLO/BLM Monument
△ Center Station

True Meridian

Note: Lines surveyed under previous groups have distances expressed in the chain unit.

Sec. 33



Vegetation in the area consists of heavy stands of yellow and sugar pine, white and douglas fir, and cedar.

Area resurveyed: 22,104.35 Acres

BLM

1963

On File at Cottage Way, Sac

15/22

41.1439

Case 2:14-cv-00630-MCE-DAD   Document 61   Filed 03/24/15   Page 18 of 38



| United States<br>Department of<br>Agriculture | Forest<br>Service | Yuba River<br>Ranger<br>District | 15924 Hwy. 49<br>Camptonville, CA<br>95922-9707<br>(530) 288-3232<br>(530) 288-0727 fax<br>(530) 288-3656 TDD |
|---|---|---|---|

**File Code:** 2720

**Date:** MAY 1 3 2008

John Schema
P.O. Box 145
Nevada City, CA 95959

Dear Mr. Schema:

Per your request pertaining to access to private ground through public land

"Alaska National Interest Lands Conservation Act, December 2,1980 (P.L. 96-487, Title XIII; 94 Stat. 2457; 16 U.S.C. 3210)
Access Sec. 1323. (a) Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System."

If you have any questions please call Heather Newell at the Yuba River Ranger Station at (530) 478-6253.

Sincerely,

JEAN M. MASQUELIER
District Ranger



**Caring for the Land and Serving People**          Printed on Recycled Paper

**USDA Forest Service**
Tahoe National Forest
**Yuba River Ranger Station**
15924 Highway 49
Camptonville, CA  95922
Phone (530) 288-3231
Fax (530) 288-0727
www.h.newell@fs.fed.us

Heather Newell — Asst. Public Service Off.

John D. Schema
P.O. Box 145
Nevada City, CA 95959
(530) 412-2854

July 1, 2008

Heather Newell
USFS Yuba River Station
Special Use Permits
Camptonville, CA

Ref:   Schema's CalTrans Encroachment Application/Special Use Permit

Dear Ms. Newell:

In reference to your site visit on May 6, 2008 where we were looking into the possibilities of my obtaining a Special Use Permit to cross over your property just east of Hwy 49 and north of Clear Creek between the Middle Yuba and NSJ basically replacing a route that was terminated in the realignment of Hwy 49 in approximately the 1950's.

I delivered the encroachment application late Monday June 30, 2008 to Carol Bosch, in the Encroachment Permit department at CalTrans in Marysville. Enclosed please find her contact information, a copy of my receipt containing my Permit # 0308-6RS0505 and a copy of my Encroachment Permit Application for your reference.

Ms. Bosch requested, since USFS actually owns the land to be accessed by the proposed encroachment, something from you that will show CalTrans I have the necessary authorization to construct and use the proposed encroachment affecting your property before it could be approved. I understand a primary consideration in approval is the 'Corner Site Distance' which I will be double checking today and will let you know immediately if their appears to be an obvious problem. I do not expect one. Otherwise, CalTrans will conduct their initial site inspection in approximately 10 days where they will be able to more specifically tell us where we stand.

As I recall our conversation of May 6th, I believe you mentioned the USFS will be required to grant me 'primary' access to my property over theirs if I do not have any other access over private land. Will the 'Arbitration Award' and the letter from Mr. Fleenor's attorney, Mr. Zellmer, clearly stating my neighbor's position on my crossing his land for any reason, satisfy the requirements of the USFS to allow them to grant me 'primary' access over USFS land, and in doing so, put an end to the conflict between Mr. Fleenor and myself in what appears to be the best solution for all concerned. Can you help make this happen…PLEASE!!

In great appreciation for any and all of your assistance in this important matter,

**DEPARTMENT OF TRANSPORTATION DISTRICT 3**

703 B Street
PO BOX 911
MARYSVILLE, CA 95901-0911
PHONE (530) 741-4403
FAX (530) 741-4236
TTY (530) 741-4509



*Flex your power!*
*Be energy efficient!*

July 18, 2008

0308-6RS0505
03-NEV-49-29.93

John Schema
P.O. Box 145
Nevada City, CA 95959

Dear Mr. Schema:

Your application to construct a road approach to State Highway 49 in North San Juan has been reviewed. We have the following comments:

1) Please provide a written confirmation from the Forest Service that you will be allowed to use Forest Service land for access.

2) Asphalt paving to a minimum of 33 feet from the edge of traveled way is required.

3) Removal of brush and tree trimming to achieve 500' sight distance is required.

Refer to our file number **0308-6RS0505** on correspondence regarding this Permit. If you have any questions you may contact Don Schmitt at (530) 741-4407.

Sincerely,

BRUCE D. CAPAUL
Chief, Office of Encroachment Permits

*Ref. May 13, 2008*
*Letter*

*Provided*
*and misplaced*
*and Re-requested*

1    John D Schema
        P.O. Box 145
2    Nevada City, CA 95959
        Phone no. 530-412-2854
3

    Defendant appearing in propria persona
4

5

6          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7            **IN AND FOR THE COUNTY OF NEVADA**

8

9

10    **DAVID J. FLEENOR**            **Case No. 72767**

          Plaintiffs,
11                          **DEFENDANT'S PROPOSED**
                                   **JOINT STATEMENT OF THE**
12                                   **CASE**

        Vs.
13    **JOHN D. SCHEMA; DOES 1-100, inclusive.**    <u>**Trial:**</u>
                                      **Date: September 3, 2008**
14                                **Time: 9:00 a.m.**
             Defendants.               **Dept. 6**
15

                                  <u>**Pre-Trial Conference:**</u>
16

                                  **Date:   August 22, 2008**
17                                **Time:  11:00 a.m.**
                                  **Dept: 6**
18

19    TO PLAINTIFF DAVID J. FLEENOR AND TO THE COURT:

20    Defendant John D. Schema proposes that the following be read to the jury as a statement
    of the case at the commencement of trial:
21

          "Plaintiff in this case is David J. Fleenor.  He is the successor in interest, and
22    surviving spouse of Ann E. Fleenor, who was also a party at the beginning of this case.
    The defendant is John D. Schema.
23

24

                                    1

1    Mr. Fleenor is suing Mr. Schema for trespass and slander of title.  The case
involves land owned by the parties between North San Juan and the Middle Yuba River

2  in Nevada County.  The two properties are contiguous with each other.

    Mr. Schema Claims he has a right to cross over Mr. Fleenor's land, and has cross-

3  complained against Mr. Fleenor based on claims there is a public road extending from
New School Road West, to the west, traversing across Mr. Fleenor's land and onto Mr.

4  Schema's land, and that Mr. Schema has acquired various forms of unwritten legal
easements that are not formally expressed on his deed.  Mr. Fleenor denies that Mr.

5  Schema has any such rights to travel upon his property.

    The parties are seeking a determination of their rights and damages."

6

7  DATED: August 21, 2008           By: _____

8                            John D. Schema
                            Defendant appearing in propria

9                            persona

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## 2.   References to discussions with USFS facilitating settlement of case # 72767, Fleenor vs. Schema:

### A.   Bill Walker's cover letter dated Feb. 6, 2009 (counsel representing Schema):

Second paragraph:   "It's in my opinion <u>the most important document, because it is the one that you can use to show necessity for the special use permit</u>." (Reference to: Notice of Judgment.)

Forth paragraph:   "Additionally, <u>if you feel I can help with the special use permit in any way</u>, please don't hesitate to call me."


### B.   Court Transcript dated Jan. 14, 2009:

page 4, lines 11-18:   Mr. Zellmer (counsel representing Fleenor): "For a period of two years from today Mr. Schema's sole right to travel across the so-called road in question shall be to enable access for heavy equipment to his property which is necessary, and cannot enter through the Forest Service property, solely <u>to construct access to his property across the land contiguous with and south of his land owned by the U.S. Forest Service</u>. No part of that access shall be constructed on the Fleenor parcel."

Page 6, lines 21-25:   Mr. Walker; counsel representing Schema:      "**As you are aware, our conversation in chambers and also <u>the conversation with some of the U.S. Forest Service personnel</u> kind of lengthened out the period of time that we are discussing until the road that we are hoping to build can start being built.**"

Page 7, lines 9-12:   The Court (Honorable Thomas M. Anderson):      "**<u>Then I took it upon myself to contact the Forest Service</u> and they said it would take as long as two years for this process to work it's way through.**"

Page 8, lines 11-16:   The Court (Honorable Thomas M. Anderson):      "It appears Mr. Schema is concerned about his limited right of access which has been limited for the purposes of bringing in equipment or materials that can't be brought in any other way **<u>for the purpose of building, creating his access road through Forest Service land when that becomes permitted</u>.**"

The assumption was clearly "<u>When</u>", not if, the road would ultimately be permitted. That was the basis of the settlement — judgment.

FILED

M. FLOWERS

JAN 2 8 2009

Superior Court of the
State of California
COUNTY OF NEVADA

1  Joseph F. Zellmer III
   Attorney State Bar # 112268
2  ZELLMER LAW GROUP
3  360 Sierra College Drive, Suite 220
   Grass Valley, CA  95945
4  Telephone: (530) 477-7444
   Facsimile: (530) 477-7773
5

6  Attorneys for Plaintiff
   DAVID J. FLEENOR
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF NEVADA

10

11 DAVID J. FLEENOR,                    Case No.: 72767

12                                      **JUDGMENT**
            Plaintiff,
13

14    vs.

15 JOHN SCHEMA; DOES 1-100, inclusive.

16            Defendants.

17

18

19     This case came on for trial commencing January 13, 2009 before a jury.  Plaintiff was

20 represented by attorney Joseph F. Zellmer.  Defendant retained counsel during trial and was

21 represented by attorney William G. Walker.  Evidence was taken and plaintiff indicated his

22 intention to move for nonsuit and/or directed verdict.  The parties agreed to submit the matter

23 to the Court for a decision based on the evidence introduced.  The Court, having considered

24 the evidence and the parties' arguments, finds, adjudges and decrees as follows:

1.  Neither defendant John Schema, his agents, licensees or invitees, nor the general public, nor any member thereof based solely on standing as a member of the general public, has any right of entry or access over the Fleenor parcel legally described on Exhibit A attached hereto and incorporated herein (the **"Fleenor Property"**) to access the Schema parcel legally described on Exhibit B attached hereto and incorporated herein (the "**Schema Property**"), or any other parcel of land.

2.  Any entry by defendant John Schema or any person acting with his permission or encouragement onto the Fleenor Property shall be a willful trespass punishable as contempt and subject to all other civil remedies and criminal penalties.

3.  This Judgment shall be binding upon John Schema and shall burden and run with the Schema Property and is binding upon Mr. Schema's successors and assigns.

IT IS SO ORDERED.

JAN 2 8 2009

**Thomas M. Anderson**

Thomas A. Anderson
Judge of the Nevada County Superior Court

# EXHIBIT A

Parcels 3 and 4 of the PARCEL MAP for FRANK C. SPARLING, filed in the Office of the County Recorder of the County of Nevada, State of California, on November 23, 1973, in Book 6 of Parcel Maps, at page 121.


APN 60-330-17-000 and 60-330-18-000

# EXHIBIT B

ALL THAT PORTION OF THE NORTHWEST QUARTER (NW ¼) OF SECTION 33, TOWNSHIP 18 NORTH, RANGE 8 EAST, M.D.M., ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHEASTERLY OF THE SOUTHEASTERLY LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED DATED MAY 23, 1947, RECORDED SEPTEMBER 11, 1947, IN BOOK 120 OF OFFICIAL RECORDS, AT PAGE 336, EXECUTED BY ZOANN POPE TO THE STATE OF CALIFORNIA.

APN: 60-330-03

# ENCROACHMENT PERMIT

TR-0120 (REV 6/200)

| | |
|---|---|
| **Permit No.** 0308-6RS0505 | |
| **Dist/Co/Rte/PM** 03-NEV-49-30.98 | |
| **Date** January 28, 2009 | |

In compliance with (Check one):

☒ Your application of _____ June 30, 2008

☐ Utility Notice No. _____ of _____

☐ Agreement No. _____ of _____

☐ R/W Contract No. _____ of _____

| **Fee Paid** $ 1968 | **Deposit** $ N/A |
|---|---|
| **Performance Bond Amount (1)** $ N/a | **Payment Bond Amount (2)** $ N/A |
| **Bond Company** | |
| **Bond Number (1)** | **Bond Number (2)** |

**TO:**
John Schema
P.O. Box 145
Nevada City, CA 95959
Attn: (530) 412-2854

**Ref No.**
PLAN ATTACHED

, PERMITTEE

and subject to the following, PERMISSION IS HEREBY GRANTED to:

Construct road approach to the east side of State Highway 49 north of Clear Creek to provide access to Permittee's property through Forest Service land.

1) As mitigation for tree removal, Permittee shall purchase credit at a local nursery for 63 oak seedlings. Purchase credit shall be delivered to Monica Finn, Caltrans District 3 Landscape Mitigation Specialist, prior to the commencement of any work in the highway right of way.

2) A Traffic Control plan is required. Work shall not commence until the Traffic Control plan has been approved by Caltrans representative. Work hours shall be as approved by Caltrans representative. Weekend and holiday work is not authorized. SEVEN (7) WORKING DAYS NOTICE IS REQUIRED FOR LANE CLOSURES.

3) AS BUILT PLANS are required.

THIS PERMIT IS NOT A PROPERTY RIGHT AND DOES NOT TRANSFER WITH THE PROPERTY TO A NEW OWNER.

The following attachments are also included as part of this permit *(Check applicable)*:

| | | | |
|---|---|---|---|
| ☒ Yes | ☐ No | General Provisions | |
| ☐ Yes | ☒ No | Utility Maintenance Provisions | |
| ☒ Yes | ☐ No | Special Provisions **TRAFFIC CONTROL, SWPPP, LT** | |
| ☐ Yes | ☒ No | A Cal-OSHA permit, if required: Permit No. _____ | |
| ☐ Yes | ☒ No | As-Built Plans Submittal Route Slip for Locally Advertised Projects | |
| ☐ Yes | ☒ No | Storm Water Pollution Protection Plan | |

In addition to fee, the permittee will be billed actual costs for:

| | | | | |
|---|---|---|---|---|
| ☐ Yes | ☒ No | Review | | |
| ☐ Yes | ☒ No | Inspection | | |
| ☒ Yes | ☐ No | Field work | | |

*(If any Caltrans effort expended)*

☐ Yes ☒ No The information in the environmental documentation has been reviewed and considered prior to approval of this permit.

This permit is void unless the work is completed before **February 1, 2010**

This permit is to be strictly construed and no other work other than specifically mentioned is hereby authorized.
No project work shall be commenced until all other necessary permits and environmental clearances have been obtained

Moe Azar
355 Crown Point Circle, Suite C1
Grass Valley, CA 95945
(530) 265-6737 Cellular 751-6127
cc: Stan Richins, Maint-Sutter/Sierra Region

APPROVED:

JODY JONES, District Director

BY:

BRUCE D. CAPAUL, Chief Office of Encroachment Permits

**ADA Notice** For individuals with sensory disabilities, this document is available in alternate formats. For information call (916) 653-3657 or TDD (916) 654-3880 or write Records and Forms Management, 1120 N Street, MS-89, Sacramento, CA 95814.

FM 91 1436



**USDA**

United States | Forest | Yuba River
Department of | Service | Ranger
Agriculture | | District

Camptonville, CA
95922-9707
530-288-3231
530-288-3656 TDD
530-288-0727 FAX

File Code: 2720
Date: SEP 2 1 2009

Mr. John Schema
P.O. Box 145
Nevada City, CA 95959

Dear Mr. Schema:

You have requested a special use permit to construct a road across National Forest lands to access your property adjacent to State Highway 49 north of North San Juan. Your property is not completely surrounded by National Forest lands; there is adjacent private land and State Highway 49 abuts your property. You have not been successful in receiving access across the adjacent private land.

You have presented us with two proposals to access your property. The lands in question are quite steep. Both involve creating roads approximately 1/3 mile long up a steep grade, generally about 15% grade with a perennial stream at the toe of the slope. Soils on the slope are generally decomposed granite, which is a light weight, highly erosive type of material that does not compact well. Surfaces exposed to the elements erode readily from rain and runoff. Examples of this failure and erosion are visible along Highway 49 in this part of the county, and also on the proposed road site. The first proposed alignment necessitates full bench road construction and involves three switchbacks. The second alignment requires crossing several drainages. Numerous crossings of intermittent streams in a relatively short distance would disrupt normal water flows. Both alignments will require a large number of trees to be removed, cut and fill construction with an excess of excavated material, and many drainage structures to be developed and maintained.

In addition, because the site distance is poor at this site accessing Highway 49, extensive earthwork and removal of trees and brush would have to occur on the other side of Highway 49.

Much of the area within the proposal is within Riparian Conservation Areas (RCAs) which are lands in the near-stream environment. The Record of Decision, Sierra Nevada Forest Plan Amendment (SNFPA) states, "The SNFPA goal of protecting and restoring desired conditions of RCAs defines the widths as follows: Perennial Streams, 300 feet each side, measured from bank full edge; Seasonal Flowing Streams, 150 feet each side, measured from bank full edge." Projects that propose activities in RCAs need to enhance or maintain the physical and biological characteristics of the RCA.

**Caring for the Land and Serving People**

Printed on Recycled Paper 

Applicable references with the SNFPA, which generally discourage road building that alters water flow include Standard and Guideline (S&G) #100 which states, "Maintain and restore the hydrologic connectivity of streams, meadows, wetlands and other special aquatic features by identifying roads and trails that intercept, divert, or disrupt natural surface and subsurface water flow paths. Implement corrective actions where necessary to restore connectivity." This S&G provides for maintaining and restoring connectivity, not disrupting the flows.

Our Best Management Practice, #2.13 states, "Road construction within the designated RCAs shall be kept to a minimum to protect riparian habitat, channel stability, and to prevent sediment from entering the channel."

I understand that your property that abuts Highway 49 is very steep. However, the proposed project on the Forest Service parcel involves extensive hillside modification and difficult construction in a sensitive area; we would not propose a Forest Service road in this location due to the level of adverse environmental impacts.

Therefore, my decision is to deny the proposal for either road; we would consider a proposal to access the site with a foot/single tract trail which will need to be maintained by you, with appropriate water drainage. I considered an ATV trail, but again, we would not propose a Forest Service ATV trail on this steep of ground with this many riparian areas.

I am sure this is disappointing. In special uses, it is not the Forest Service's responsibility to help a proponent find the most economical solution. Rather, the Forest Service must find that the use is in the public interest. Because of the environmental impacts of this proposal I can not say the proposal is in the public interest, nor can I say that the use is compatible with our Riparian Conservation Areas.

Sincerely,

JEAN M. MASQUELIER
District Ranger



**ENGINEERING, INC.**

16922 Old Washington Road
Nevada City, CA 95959
Voice/Fax: 530.478.9500
Cell: 916.704.0824
CaimanEng@earthlink.net

October 4, 2010

Genice Froehlich, District Ranger
United States Department of Agriculture
Forest Service; Yuba River Ranger District
15924 State Highway 49
Camptonville, CA 95922-9707

Subject:      Schema Property
              31009 State Highway 49
              North San Juan, Ca
              Caiman Engineering Job No 10-63
              **Property Access Evaluation Letter**

The above referenced property was examined on August 13, 2010 with the purpose of identification of potential access routes for the construction of a single family dwelling unit. The property is bordered to the north and west by Highway 49. To the east of the property is private land and United States Forest Service land is adjacent to the property to the south. The only identified building site is in the southeast corner of the property.

Eastern access routes through the private property were not closely examined as I was told that this option has been effectively eliminated per a court order from the Superior Court of California, County of Nevada.

The remaining perimeter of the property was examined for access points. Existing and new routes were considered. The boundary adjacent to Highway 49 was examined and found to be roadway cuts with near vertical slopes and greater than 45 degree slopes above the cuts. An old skid road was examined and found to have a base of decomposed granite with slopes at some locations greater than 30%. The remainder of the northwestern perimeter was examined and two other routes were identified, walked and found to be excessively steep. It is my opinion that the only potential access from Highway 49 would be the reconstruction of the skid road. However, I do not believe that the road could be reconstructed and meet county driveway construction standards and fire access requirements. For your convenience, the following are the County requirements for driveway construction which in my opinion cannot be met. Fire Safe access has additional requirements.

- Driveway grades shall be no more than 16% except where property is below 4,000 feet and then driveway may have sections of up to 20% grade for a distance of 100 feet. (Note that the existing skid road and other options had estimated slopes greater than 30%

Schaefer Property
31009 State Highway 49
North San Juan, Ca
Property Access Evaluation Letter
September 9, 2010
Page 2

at several locations)

- Driveway curves shall be constructed with a minimum curvature radius of not less than 50 feet measured at the centerline. (The skid road has curves that I believe are less than 50 foot radius)

- Section 3312 - Cuts: Slope cut surfaces shall be no steeper than is safe for the intended use and shall be no steeper than 1 unit vertical in 2 units horizontal.

Various southern access routes were examined that crossed USFS lands. The two primary routes identified and examined cut up the slope to the north of Clear Creek. The slope was found to be half as steep as any route on the highway side of the property as can be seen on the USGS topographic map attached below. Two viable options were specifically identified: 1. An existing passable route running east from the existing old concrete bridge 300 feet along the north bank of Clear Creek before turning northerly up the slope; and 2. A newly proposed route intended to maintain 100' setback from Clear Creek to avoid impact to sensitive riparian habitat. Both of these routes join an old roadbed as documented in letter from Stephen Hein LS 6792 dated June 2, 2005. It was also personally noted that the old roadbed currently diverts runoff from one subdrainage to another which could be corrected by the construction of the option 2 route.



Schema Property
31000 State Highway 49
North San Juan, Ca
Property Access Evaluation Letter
September 9, 2010
Page 3

Based on my personal on-site investigation, in conclusion, it is my professional opinion that access to the building site could not be completed within County standards on the western or northern boundaries of the property adjacent to Highway 49. The only allowable access which I believe would meet the County driveway construction standards would be access off Highway 49 through Forest Service property on the southern border of the property.

If you have any questions, please don't hesitate to call me at 530-478-9500.

Sincerely,



Roger Blair P.E.
Caiman Engineering Inc.

# COUNTY OF NEVADA
# COMMUNITY DEVELOPMENT AGENCY
## PLANNING DEPARTMENT
## CODE COMPLIANCE DIVISION
**950 MAIDU AVENUE, SUITE 170, NEVADA CITY, CA  95959-8617**
**(530) 265-1222  FAX (530) 265-9854  http://mynevadacounty.com**

Steven L. DeCamp
Community Development Agency Director

Brian Foss, Interim Planning Director
Gregory Shaffer, Program Manager

November 30, 2011

John Schema
P.O. Box 145
Nevada City, CA  95959

RE:  APN 60-330-03 (31009 State Highway 49, Nevada City)

Dear Mr. Schema:

Per the inspection of your property on 11/29/11 with Mr. Brian Washko, Nevada County Building Official, you are not required to obtain a grading permit or restore the property at this time, subject to the following requirements and returned signed copy of acknowledgement;

1) You must not use the "road area" as a road or driveway, or for access of any kind;

2) You are required to continually maintain the erosion control of this area.

If the above requirements are not acknowledged or met at any time now or in the future; you may be required to restore the area under permit from the Building Department and or obtain a grading plan.

Please sign below that you acknowledge the above requirements and return one copy to me by 12/14/11 at the above address.

Regards,

Shari Parker
Code Enforcement Officer
Nevada County Community Development Agency
(530) 265-7085

**I John David Schema, hereby acknowledge and will adhere to the above requirements**

_____         _____
Signature                                                     Date

H:\CE\SHARI\Schema\2011 11 23 acknowledgment to monitor erosion control.doc

*Printed on Recycled Paper*

**O'Dell Engineering**
**Civil Engineer – Land Surveyor**

212 W. Main Street
In the historic Holbrooke Hotel
Grass Valley, CA 95945
Office (530) 273-1353 x202
Cell (530) 263-1091
Email jodell@nevadacounty.com
www.nevadacounty.com

March 9, 2012

To whom it may concern:

At the request of John Schema, I attended a meeting on January 4, 2010 at the National Forest Service district office in Nevada City. The purpose of the meeting was to determine why access to John Schema's land was denied as outlined in a Forest Service letter dated September 21, 2009 to John Schema. The access in question had been used for years to access to the property owned by John Schema.

Attending the meeting besides me was Jean Masquelier, District Ranger USFS, Heather Newell USFS and John Schema

Mr. Schema and I protested the basis of the denial stating that the erosion issues cited could easily be addressed through the engineering process. It was clearly explained to us by Ms. Masquelier that Forest Service had no desire to grant any access across Forest Service land.

It was further emphasized that Mr. Schema already had access from State Hwy 49 directly onto his land, regardless of the difficulties involved, and if he did not agree with this decision, he had the right to obtain a judicial decision as proof of his right of access.

After much discussion, it was decided that the forest service representatives were adamant in denying access over forest service land. However, Ms. Masquelier did suggest a second viable alternative. Mr. Schema could sell his land to a land trust, and that the Forest Service would be interested in acquiring his parcel from the trust.

This seemed like a good alternative and at that point the meeting was adjourned.

John J. O'Dell, PE, PLS



| United States | Forest | Yuba River | 15924 Highway 49 |
|---|---|---|---|
| Department of | Service | Ranger | Camptonville, CA |
| Agriculture | | District | 95922-9707 |
| | | | 530-288-3231 |
| | | | 530-288-3656 TDD |
| | | | 530-288-0727 FAX |

**File Code:** 2720

**Date:** April 25, 2012

Mr. John Schema
P. O. Box 145
Nevada City, CA 95959

Dear John:

I am writing this letter to confirm certain statements made by you and me during our site visit to your property on Friday, March 9, 2012. Kim Pruett, of Representative McClintock's office, Steven Castleberry, Principal Civil Engineer of Nevada County, Kaari Carpenter, Fuels Officer, Clarence Draper, Civil Engineer Technician, and you and I were all present for almost two hours on the site and at your property. You were once again asking for permission to access your private land through Forest Service land. You have asked me to make a decision on that point before, but I did not accept your proposal because it did not meet the basic requirements that I must consider when determining if a Special Use Permit should be issued, per 36 CFR 251. As I told you in my October 26, 2011 letter, your property is not an inholding, and thus the Alaska National Interest Lands Conservation Act (ANILCA) does not apply, and the Forest Service is not required to provide you with access to your land. Therefore, I must use the Special Use Permit proposal process to determine whether or not to accept your proposal.

I told you that prior to me considering a proposal for a Special Use Permit, I must first decide that the proposal is in the public interest. You would also have to provide me with proof of both technical and financial capability to complete the tasks at hand. Those tasks include road plans that meet both Forest Service and County specifications. You then asked, if you deliver plans and show you have the finances, could you have assurances that you will get the access? I cannot make any decision until I have all the information, and the technical and financial capability is only the first part of that long process. I told you that thus far, I have not been convinced this project is within the public interest, or that you have the capabilities mentioned above. There are also other environmental issues.

You then proceeded to tell me that the only reason you settled with arbitration on your lawsuit with your neighbors for access was because both you and the judge were assured by Jean Masquelier that the FS would provide you access to replace that lost across private land. I asked you to show me the entire transcripts, of which I have received only one page with edited excerpts from the transcripts. You then asked me if I would talk to the judge, because you claimed Jean Masquelier and the judge made promises to you. In the interest of being fair and getting all the facts, I told you, yes, I would talk with the judge if the judge were willing to speak to me. You were to arrange such a meeting. We ended our outing on that note.



We have checked with CalTrans and discovered that the state abandoned the old roadbed several years ago, and that the property then reverted to the property owner, the U.S. Forest Service. So, it would be entirely up to us whether or not to allow access. Our recent Travel Management Decision does not recognize the old roadbed as a road. So, I wait for a meeting with the judge or additional evidence from you that meets the above standards prior to accepting your proposal to look at a Special Use Permit for road access.

I was notified last week of motor cycle use beyond the CalTrans blocked portion of the abandoned road alignment. In an effort to prevent such use in the future, my staff wants to block the far end of the abandoned alignment. I thought that you would wish to prevent unauthorized use near your property. Instead, I received a call from you complaining again that I am blocking public access to a public road. John, a line on an old map does not prove the road is a public road. Roads have been realigned and obliterated many times in the past, and the old roads are no longer automatically considered public access. I will hold off, temporarily, on placing such rocks. However, if I hear of continued motorized use, I will be forced to place rocks so that no motorized use is possible up that old skid trail.

I have also sent you an authorization for Firewise Clearing near your property. I hope you continue clearing within the 100 feet of your property line as authorized. Thank you.

Sincerely,

*/s/Genice Froehlich*
**GENICE FROEHLICH**
**District Ranger**


cc: Kim Pruett
Field Representative



| | | | |
|---|---|---|---|
| **United States** | **Forest** | **Yuba River** | **15924 Highway 49** |
| **Department of** | **Service** | **Ranger** | **Camptonville, CA** |
| **Agriculture** | | **District** | **95922-9707** |
| | | | **530-288-3231** |
| | | | **530-288-3656 TDD** |
| | | | **530-288-0727 FAX** |

**USDA**

**File Code:** 2720
**Date:**

**AUG 0 2 2012**

Mr. John Schema
P. O. 145
Nevada City, CA 95959

Dear Mr. Schema:

This letter responds to your repeated inquiries concerning your proposal for an access road across National Forest System (NFS) lands to your real property located within the NW ¼ of Section 33, T18N, R8E. Previously, I determined that your proposal does not fall within the requirements of the Alaska National Interest Lands Conservation Act (ANILCA) nor does it pass the screening criteria for a Special Use Permit. Please reference my letter of October 26, 2011 which rejected your access proposal. In 2009, the same decision was reached by District Ranger Masquelier.

On March 9, 2012, I agreed to meet with you in the field to further discuss your case with Forest Service, County and Congressional staffs. At this meeting no new information was presented that affected previous Forest Service decisions. Please reference my letter of April 25, 2012 which documented our field meeting. Your letter of June 4, 2012 again provided no additional information that has bearing on the disposition of your case. An access road to private lands falls within the scope of a Special Use of NFS lands as defined at Title 36 CFR 251.50 and requires a Special Use Authorization.

It remains my determination that your proposal for an access road across NFS lands is not consistent with the laws, regulations and policies governing the use of NFS lands. I am rejecting your access proposal because it does not meet the screening criteria for a Special Use Permit. Specifically, I determined that your proposal failed to meet criterion (ii) at Title 36 CFR 251.54(e)(5); the proposed use is not in the public interest.

This is my final administrative decision concerning your access proposal and I find no reason for further consideration of your case. This decision is not subject to appeal, review or stay [Title 36 CFR 251.83(k)].

Sincerely,

GENICE FROEHLICH
District Ranger

Cc: Kim Pruett, Hank Weston



**Caring for the Land and Serving People**

Printed on Recycled Paper

